UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Steve Conley, *et al*,

    Plaintiffs,

v.                                                                          Case No.: 11-11205
                                                                            Honorable Sean F. Cox
MLT, Inc., *et al*,

    Defendants.

_____/

**OPINION & ORDER DENYING
DEFENDANTS' MOTIONS TO DISMISS**

On March 25, 2011, Plaintiffs Steve Conley, Nancy Conley, and their son J.C. (taken together, "Plaintiffs"), filed this personal injury action against Defendants MLT Inc. ("MLT"), Diamond Hotels Cozumel ("Diamond"), Holiday Village White Sands ("Holiday Village"), Occidental Hotels Management B.V. ("Occidental B.V."), Occidental Hoteles Management S.L. ("Occidental S.L."), and Allegro Resorts Marketing Corporation ("Allegro"). The matter is currently before the Court on Allegro's, Occidental B.V.'s, and Occidental S.L.'s[1] motions to dismiss for lack of personal jurisdiction. After Defendants each filed a motion to dismiss, the Court permitted limited discovery on the issue of personal jurisdiction. The parties have submitted multiple briefs on the matter and the Court finds that oral argument will not further aid the Court in its decision. The Court therefore declines to hold oral argument pursuant to Local

---

[1]For ease of reference, the Court will refer to Allegro, Occidental B.V., and Occidental S.L. as "Defendants." The Court will also refer to Occidental B.V. and Occidental S.L. as the "Occidental Defendants."

1

Rule 7.1(f)(2). For the reasons set forth below, the Court shall DENY Defendants' motions to dismiss.

BACKGROUND

In September of 2008, Plaintiff Nancy Conley booked a vacation package from Northwest World Vacations/MLT via a travel agency located in Michigan. (Conley Affidavit at ¶ 2). Prior to booking the hotel reservations, Plaintiffs were directed by their travel agency to the website OccidentalHotels.com to select a resort at which to vacation. After reviewing the Occidental Defendants' website, Plaintiffs selected the Diamond Hotels Cozumel and/or Holiday Village resort in Cozumel, Mexico. Plaintiffs booked their Northwest World Vacations/MLT vacation based upon the resort's designation on Occidental's website as a Northwest World Vacation.

The action arises out of an incident that occurred on April 11, 2009, while Plaintiffs were staying at the Diamond Hotels Cozumel and/or Holiday Village resort. J.C. was seriously injured when one of the support poles of the hammock upon which he was laying broke, causing him to fall and suffer serious head injuries. J.C. fractured his skull and was subsequently airlifted from Cozumel, Mexico to Broward County, Florida, where he underwent emergency surgery.

Plaintiffs filed their First Amended Complaint on April 11, 2011 (Doc. No. 5), alleging the following three claims: Count I – Negligence; Count II – Violation of the Michigan Consumer Protection Act, M.C.L. §445.901, *et seq.*; and Count III[2] – Infliction of Emotional Distress. It is Plaintiffs' position that "the Occidental Hotels and Resort Defendants are the

---

[2]Plaintiffs' Count III is improperly labeled "Count V."

owners, operators and/or control and/or maintain the premises of Diamond Hotels Cozumel and/or Holiday Village located in Cozumel, Mexico." (Complaint at ¶ 9).

Defendants in this action are related entities. Occidental B.V. was a Dutch holding company that owned 100% of the shares of Allegro, a Florida marketing corporation. In 2011, Occidental B.V. was merged into Occidental S.L., a Spanish company. (Occidental B.V. Resp. to Interrogs, Plfs' Resp., Ex. D).

In their First Amended Complaint, Plaintiffs allege that this Court has personal jurisdiction over all Defendants because Defendants fall within the scope of Michigan's long-arm statute, specifically MCL §600.715(1) – transacting any business within the state. Plaintiffs contend that Defendants have availed themselves in Michigan through their sales and marketing efforts to citizens of Michigan. Plaintiffs further allege that the Defendants are alter egos of each other.

On June 23, 2011, Allegro filed a motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), asserting that Allegro has not made any business transaction within the state of Michigan so as to subject it to Michigan's long-arm statute. (Doc. No. 14). On September 7, 2011, Occidental B.V. also filed a motion to dismiss for lack of personal jurisdiction, asserting many of the same grounds for dismissal as Allegro. (Doc. No. 18). Later, on November 15, 2011, Occidental S.L. filed its own motion to dismiss for lack of personal jurisdiction. (Doc. No. 28).

On September 16, 2011, Plaintiffs filed a motion to adjourn the hearing on the pending motions to dismiss and for extra time to respond to the motions to dismiss. (Doc. No. 24). Plaintiffs also requested an opportunity to conduct discovery, solely on the issue of personal

jurisdiction. Plaintiffs sought limited discovery in order to gather information on Defendants' sales and marketing efforts in Michigan, and also on Plaintiffs' alter-ego theory of personal jurisdiction.

After ordering supplemental briefing, the Court granted Plaintiffs' request for limited discovery on December 30, 2011. The Court also ordered Plaintiffs to respond to Defendants' motions at the close of the limited discovery period. (D.E. No. 30). During the limited discovery period, Plaintiffs served upon Defendants their interrogatories and requests for production of documents relating to Defendants' marketing efforts toward, and contacts with, Michigan. Plaintiffs also deposed Henny Rojas, the Vice President of Marketing for Allegro, and Jesus Perez Rodriguez, General Manager of Corporate Affairs for Occidental S.L..

On March 15, 2012, Plaintiffs filed a single response to all three of Defendants' motions to dismiss. (Plfs' Resp, D.E. No. 34). On March 27, 2012, Allegro filed a reply to Plaintiffs' response brief. (Allegro Reply, D.E. No. 35). Similarly, Occidental S.L. filed a reply brief on March 29, 2012. (Occidental S.L., D.E. No. 36).

## LEGAL STANDARD

Defendants bring their motions to dismiss pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. When bringing an action in federal court, the plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936)). The district court has discretion to either; "decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458. When the Court does not conduct an

evidentiary hearing the plaintiff need only make a *prima facie* showing of personal jurisdiction.[3] *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). "[W]e do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). However, where "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction, the prima facie proposition loses some of its significance." *Id.* (citations and internal quotations omitted).

## ANALYSIS

I.   Does the alter-ego theory of personal jurisdiction apply in this case?

The Sixth Circuit has adopted an alter-ego theory of personal jurisdiction. This theory "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate

---

[3]In their reply briefs, Defendants assert that Plaintiff must establish personal jurisdiction by a preponderance of the evidence. In support of this argument, Defendants cite to *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*, 545 F.3d 357, 360 (6th Cir. 2008) (stating, "Where. . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing *or* limited discovery. . . the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.") (internal citations omitted and emphases added). This is the only case that the Court has found that implies that the preponderance of the evidence standard applies to cases where courts allow discovery in aid of determining a motion to dismiss for lack of personal jurisdiction. The great majority of Sixth Circuit authority, however, applies the preponderance of the evidence standard only to when courts conduct an evidentiary hearing regarding personal jurisdiction. The reason a "'court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal,'" is "because we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

entities but are one and the same for purposes of jurisdiction." *Estate of Thomson*, 545 F.3d at 362; *Indah v. U.S. S.E.C.*, 661 F.3d 914 (6th Cir. 2011).

Under Michigan law, in order to determine whether a subsidiary's contacts are sufficient to exercise personal jurisdiction over a parent corporation, the court must look to whether "there were activities carried on in the [parent] corporation's behalf by those who are authorized to act for it." *Kircos v. Lola Cars Ltd.*, 97 Mich.App. 379 (1980). For personal jurisdiction purposes:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*United Ins. Group Agency, Inc. v. Patterson, Seasword v. Hilti, Inc.*, 449 Mich. 542, 548 n.10 (1995).

Similarly, the Sixth Circuit has also considered the following relevant factors to determine whether the alter-ego theory of personal jurisdiction applies:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

*Estate of Thomson*, 545 F.3d at 362-63.

In the *Estate of Thomas*, the Sixth Circuit balanced these factors with respect to Toyota Motor Corp. ("TMC") and one of its subsidiaries, Toyota Motor Sales, U.S.A, Inc. ("TMS").

6

While concluding that the district court could not exercise personal jurisdiction over TMC through TMS, the Sixth Circuit stated:

> As stated in the affidavits of Katsumi Ikeda and Jerry Koyanagi, employees of TMC and TMS respectively, TMC and TMS are separate legal entities. They have separate books, financial records, bank accounts, and file their own taxes. They have separate boards of directors and workforces. TMS employees report to TMS, not TMC. TMS, not TMC, controls the distribution of vehicles into the United States, including Ohio. TMS officers manage the day-to-day operations of TMS. TMC does not directly own any TMS stock nor does it have authority over TMS with regard to the distribution of vehicles. While plaintiffs say that TMC makes money from Ohio, they cite no evidence in support. Indeed, plaintiffs refer to the affidavits submitted by TMC which, as stated above, prove that TMC and TMS are separate. There is no statement in either affidavit indicating that TMC makes money from Ohio. In short, TMS is not an alter ego of TMC.

*Id.* at 363.

In construing the pleadings and the evidence in a light most favorable to Plaintiffs, and applying the factors discussed above, the Court finds that it may exercise personal jurisdiction over the Occidental Defendants based upon their relationship with Allegro. Unlike the plaintiffs in the *Estate of Thomas*, Plaintiffs in this case have submitted evidence that Allegro and the Occidental Defendants are the same companies for personal jurisdiction purposes. The majority of relevant facts regarding the relationship between Allegro and Occidental S.L. are undisputed.

Allegro's sole business is to market and sell Occidental Hotels and Resorts Properties in the United States. (Rojas Dep. at 21). Defendants do not deny that Allegro was 100% owned by Occidental B.V., which has since been merged into Occidental S.L. (*See* Diaz Aff. at ¶ 14, Plfs' Resp, Ex. B). Defendants also do not dispute that many of the same officers of Allegro are officers of Occidental S.L.. (Plfs' Resp., Ex. K). Furthermore, Defendants admit that Allegro is

not designed to earn a profit and that Allegro's operating budget is approved by Occidental S.L., through its accounting subsidiary, Overseas World Marketing. (Allegro Reply at 4; Rojas Dep. at 25, 71). Defendants further admit that Henny Rojas, Allegro's Vice President of Marketing, and a number of other Allegro officers, report directly to Richard Kirby, Occidental S.L.'s Senior Vice President for Sales and Marketing. (Allegro Reply at 4). Mr. Rojas testified that he must receive authorization from Mr. Kirby for various decisions, and that Mr. Kirby makes the ultimate determination if there is a disagreement between himself and Mr. Kirby on "what course to take." (Roja Dep. at 25).

In response, Defendants merely state that Allegro and Occidental S.L. are separate and distinct entities. The undisputed facts, however, reveal that Allegro essentially serves as the Occidental S.L. marketing department, regardless if the two corporations are distinct entities under the law. Based on the above facts, the Court concludes that Allegro's business activities are carried on in Occidental S.L.'s behalf, and that Occidental S.L. authorizes and directs the business activities of Allegro. Allegro and the Occidental Defendants therefore exist as the same entity for purposes of personal jurisdiction. *See also Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989) (concluding that a parent corporation and subsidiary were the same entity for purposes of personal jurisdiction when the parent corporation wholly owned the subsidiary, the parent corporation and subsidiary shared officers, and the parent corporation negotiated contracts on behalf of the subsidiary.)

II.   Is there personal jurisdiction over Defendants?

After determining that Allegro and the Occidental Defendants are the same entity for personal jurisdiction purposes, the Court must determine whether it has personal jurisdiction

over Defendants.

Personal jurisdiction exists over a nonresident defendant provided there are sufficient minimum contacts between the defendant in the forum state and that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Depending on the type of minimum contacts in a case, personal jurisdiction can be specific or general." *Air Products*, 503 F.3d at 550. Specific (or limited) personal jurisdiction arises from a defendant's activities in the state or if those activities had an in-state effect. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). General personal jurisdiction requires the defendant to have carried on "a continuous and systematic part of its general business" in Michigan. *Neogen*, 282 F.3d at 889.

Defendants assert that this Court cannot exercise personal jurisdiction over them because they lack sufficient minimum contacts with Michigan, and cannot be deemed to have purposefully availed themselves of the privilege of doing business in Michigan. Plaintiffs contend that they have established a *prima facie* showing of both general and specific jurisdiction. Because the Court finds that Plaintiffs have established a *prima facie* showing of specific jurisdiction, the Court does not need to determine the broader issue of general jurisdiction.

In determining whether a district court has personal jurisdiction over a moving defendant the court must: (1) determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over the defendant; and, if so, (2) determine whether the exercise of that jurisdiction comports with constitutional due process.

A. Does Michigan's Long-Arm Statute authorize jurisdiction?

Plaintiffs assert that this Court has specific jurisdiction over Defendants based on Michigan's Long-Arm Statute.

Michigan's long-arm statute, MCL § 600.705, provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L. § 600.705.

The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen*, 385 Mich. 195, 199-200 (1971). "[W]here a state's long-arm statute extends to the constitutional limits of the Due Process Clause, the two inquiries are merged; courts must only determine whether assertion of personal jurisdiction over the defendant violates the Due Process Clause." *Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, 110 F.3d 66 at * 2 (Table) (6th Cir. 1996). This requirement of the personal jurisdiction analysis is satisfied.

B. Does the exercise of jurisdiction over Defendants comport with due process?

The Due Process Clause assures that defendants do not get hailed into court in a forum where they have no meaningful "contacts, ties, or relations." *International Shoe*, 326 U.S. at

316. The Sixth Circuit has established a three-part test (the *Mohasco* test) for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir. 1989)). Courts do not apply these criteria mechanically "because the inquiry into whether jurisdiction exists turns on the facts of the individual case at hand." *Chrysler Corp. v. Uptown Motorcars-Hartford, Inc.*, 173 F.3d 854, 1999 WL 196558 (6th Cir. 1999).

      i. Purposeful Availment Requirement:

The purposeful availment requirement, or the requirement that the defendant cause a consequence in the forum state, "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewski,* 471 U.S. 462, 473 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). "'So long as a commercial actor's efforts are 'purposely directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Compuserve*, 89 F.3d at 1264 (quoting *Burger King Corp.*, 471 at 476). Thus, physical presence in the forum is not required. *Id.*

Plaintiffs assert that Defendants have purposefully availed themselves in Michigan by operating a fully interactive website,[4] and directly marketing to Michigan travel agents and individuals.

The Sixth Circuit has previously held that the purposeful availment requirement can be met through a website, if the website is sufficiently interactive. *Neogen*, 282 F.3d at 890. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citations omitted). Courts in this district have delineated three categories of interactivity for a website.

> The first category is highly interactive which is the ability to download and enter into contracts. *CompuServe,* 89 F.3d at 1264. This category is sufficient for a Court to exercise personal jurisdiction. *Id.* The second category is "a middle ground in which defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 564-65 (S.D.N.Y. 2000). The last category is where the defendant makes information available on an otherwise passive website. *Id.* A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Technologies, Inc.,* 300 F.Supp.2d 501 (E.D.Mich.2004).

*Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734, 742-743 (E.D. Mich. 2004) (finding that "because Michigan residents can purchase services and products on the website, it is sufficient for Plaintiff to create a prima facie case for purposeful availment").

---

[4]Defendants assert that the website was not owned by Defendants during the time of J.C.'s accident. Instead, they assert that it was owned by Promtal Servicios, S.L.U. ("Promtal"), another Occidental S.L. subsidiary. This distinction is irrelevant, since this website operated for the benefit of Occidental S.L. and Promtal has since been fully merged into its parent company, Occidental S.L.

Here, Defendants' website is a fully interactive one in which customers or travel agents may book stays at the various hotels and resorts owned by Defendants.  In fact, from 2007 to 2010, 155 guests with Michigan addresses booked hotel or resort reservations through Defendants' website.  (Answers to Interrogs at ¶ 1; Rojas Dep. at 37).  There is no dispute that Defendants entered into contracts with Michigan residents using their website.

Additionally, Plaintiffs submitted significant evidence that Defendants directly focused marketing efforts toward Michigan residents.  Allegro representatives attend annual trade shows in Michigan and engage in direct mail and e-mail solicitations to Michigan-based travel agencies and tour operators.  (Rojas Dep. at 60-62).  Importantly, Defendants have entered into Cooperative Marketing Agreements with Defendant MLT, a tour operator based out of Minnesota.  MLT was previously owned by Northwest Airlines, and the Occidental Hotels and Resorts became available as part of Northwest World Vacations, an important factor in Plaintiffs' decision to stay at an Occidental Hotel.  (Conley Aff. at ¶ 5, Plfs Resp., Ex. F). Plaintiffs attached the Cooperative Marketing Agreements for the years 2005-2011 as Exhibit J to their response brief.[5]  These agreements describe Defendants' marketing efforts in detail, and specifically provide for email, direct mail, and radio advertising in Michigan.  As just one example, the 2005 agreement provides, "This spring campaign will motivate travel agents and consumers to book Occidental Hotels & Resorts for booking made during two weeks of May for travel June through August.  This campaign is designed exclusively for the WorldVacations

---

[5]As further evidence of the alter-ego relationship between Allegro and the Occidental Defendants, many of these agreements are signed by Marcelo Radice, as "Vice President of Marketing" for Allegro Resorts Marketing Corp., and by Marcelo Radice as "Vice-President of Marketing" for Occidental Hotels and Resorts.

brand with enhanced focus on the primary markets of ***Detroit***, Memphis, Milwaikee, and Minneapolis/St. Paul." (emphasis added).  Similar Michigan-directed advertising goals are indicated on many of the Cooperative Marketing Agreements between MLT and Defendants.  The agreements also indicate "Occidental Total Investment" in the marketing campaigns totaling hundreds of thousands of dollars.[6]

It is important to note that Defendants do not dispute any of these facts or challenge any of the evidence submitted by Plaintiffs.  In viewing this evidence in a light most favorable to Plaintiffs, Defendants have purposefully availed themselves of the privilege of acting in Michigan through their highly interactive website, as well as through their marketing efforts directed toward residents of Michigan.

ii. Actions Arising Out of Requirement:

The second prong of the Due Process test is that the cause of action must arise from a defendant's contacts with the forum state.  The Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of,' the defendant's contacts. . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (internal citations omitted); s*ee also Compuserve,* 89 F.3d at 1267 (6th Cir. 1996) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.").  In addition, the Sixth Circuit has "characterized

---

[6] Although it is not necessary to discuss the issue in detail, Defendants' marketing efforts toward Michigan for over a six-year period may also be considered "continuous and systematic" contacts with Michigan sufficient to establish general personal jurisdiction.

14

this standard as a 'lenient standard' and ha[s] explained that the cause of action need not 'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "[O]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

The Court concludes that the "arising out of" requirement has been satisfied in this case. Plaintiffs' cause of action would not have occurred "but for" Defendants' marketing efforts in Michigan. (*See* Conley Aff. at ¶¶ 2-5). Plaintiffs chose to vacation at the Occidental resort at issue based upon Defendants' direct advertising efforts in Michigan as a Northwest World Vacation. J.C. would not have been injured but for Plaintiffs' contract with Defendants to stay at Defendants' resort. *See Theunissen*, 935 F.2d at 1464.

iii. The Reasonableness Requirement:

The third prong of the Due Process test is whether the exercise of jurisdiction is reasonable. In determining whether the exercise of jurisdiction is reasonable, the Court should consider the following factors: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; and 4) other states' interests in securing the most efficient resolution of the controversy. *Air Prods. and Controls, Inc.*, 503 F.3d at 554.

Where, however, the first two prongs are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Id.* As stated above, the first two prongs of the Due Process test have been met. Thus, an inference of reasonableness arises.

In any event, consideration of the above factors does not warrant a finding of unreasonableness. As an initial matter, the burden on the Defendant is minimal. Although

Occidental S.L. is a Spanish corporation, its subsidiary, Allegro, is based out of Florida. Furthermore, Occidental S.L. is global corporation with significant resources, and Defendants have chosen to direct marketing efforts specifically toward residents of Michigan. Defendants also admit to having sales representatives based in offices throughout the country, and those sales representatives make annual marketing visits to Michigan. Defendants' ability to defend itself in a Michigan forum would not present an undue burden on Defendants.

More importantly, Michigan has a substantial interest in protecting its citizens. By all accounts, J.C. suffered a serious injury, allegedly as a result of Defendants negligently maintaining one of its resorts in Mexico. As Plaintiffs state in their brief, if the Court were to decline jurisdiction over Defendants, Plaintiffs would be forced to litigate in Mexico and left with little recourse.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Allegro's Motion to Dismiss (D.E. No. 14) is DENIED.

IT IS FURTHER ORDERED that Occidental B.V.'s Motion to Dismiss (D.E. No. 18) is DENIED.

IT IS FURTHER ORDERED that Occidental S.L.'s Motion to Dismiss (D.E. No. 28) is DENIED.

IT IS SO ORDERED.

                                            S/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated: May 23, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Steve Conley, *et al*,

    Plaintiffs,

v.                                                  Case No.: 11-11205
                                                  Honorable Sean F. Cox

MLT, Inc., *et al*,

    Defendants.

_____/

PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2012, by electronic and/or ordinary mail.

                                              S/Jennifer Hernandez
                                              Case Manager