UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE CONLEY, NANCY CONLEY,
Individually and NANCY CONLEY
as NEXT FRIEND OF J. C., a Minor
    Plaintiffs                                       Case No. 2:11-cv-11205
                                                        Hon. Sean F. Cox
v.                                                    Magistrate Judge R. Steven Whalen

DIAMOND HOTELS COZUMEL S.A.
de C.V., a foreign corporation, HOLIDAY
VILLAGE WHITE SANDS S.A., a foreign
corporation, OCCIDENTAL HOTELS
MANAGEMENT B.V., a foreign corporation,
OCCIDENTAL HOTELES MANAGEMENT,
S.L., a foreign corporation, and ALLEGRO
RESORTS MARKETING CORPORATION,
a Florida corporation
           Defendants,
_____/

| | |
|---|---|
| LAW OFFICES OF BENNER & FORAN | JOSHUA D. YEAGER |
| BRIAN J. BENNER (P25239) | BRIAN MARQUEZ |
| NANCY SAVAGEAU (P56546) | Attorneys for Defendants, Occidental Hotels |
| DAVID A. PRIEHS (P39606) | Management B.V., Occidental Hoteles |
| Attorneys for Plaintiffs | Management, S.L. and Allegro Resorts |
| 28116 Orchard Lake Road | Marketing Corporation and Diamond |
| Farmington Hills, MI 48334 | Hotels Cozumel, S.A.  de C.V. |
| 248-737-5544/248-737-5545(fax) | 1 North Franklin 10th Floor |
| | Chicago, IL 60606 |
| | 312-980-3011/312-726-3818 |

ANTHONY J. CALATI (P34994)
VINCENT C. RABAUT, JR.(P24443)
Attorney for Defendants, Occidental Hotels
Management B.V., Occidental Hoteles
Management, S.L., Allegro Resorts
Marketing Corporation and Diamond
Hotels Cozumel, S.A.   de C.V.
333 W. Fort Street, Suite 1600
Detroit, MI 48226
313-965-6100/313-731-0410(fax)
_____/

**PLAINTIFFS' ANSWER TO DIAMOND HOTELS COZUMEL S.A.DE C.V.'S**

**MOTION FOR SUMMARY JUDGMENT**

NOW COME Plaintiffs by their attorneys and answer Defendant Diamond Hotels Cozumel S.A. de C.V.'s Motion for Summary Judgment as follows:

1. Plaintiffs admit that they have alleged that the defendant is liable for the damages plaintiffs have suffered and will suffer as a which is proximately caused by the negligence of the defendant in maintaining the premises of the Allegro Cozumel resort.  The defendant has admitted being the property owner.
2. Plaintiffs admit that   they were business invitees of the defendant when a negligently selected, inspected and maintained hammock support post owned and controlled by the defendant failed, resulting in their injury.
3. Plaintiff deny the allegations contained in paragraph 3 of defendant's motion.
4. The allegations contained in paragraph 3 of defendant's brief do not require a response.

WHEREFORE, Plaintiffs pray for entry of an order denying defendant's Motion for Summary Judgment.

                              LAW OFFICES OF BENNER & FORAN

                              By /s/ *David A. Priehs (P39606)*
                              BRIAN J. BENNER (P25239)
                              DAVID A PRIEHS (P39606)
                              Attorneys for Plaintiff
                              28116 Orchard Lake Road
                              Farmington Hills, MI 48334
                              248 737 5544/Fax 248 737 5544

Dated: July 19, 2013              dap@dpriehspc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE CONLEY, NANCY CONLEY,
Individually and NANCY CONLEY
as NEXT FRIEND OF J. C., a Minor
    Plaintiffs                                     Case No. 2:11-cv-11205
                                                               Hon. Sean F. Cox
v.                                                       Magistrate Judge R. Steven Whalen

DIAMOND HOTELS COZUMEL S.A.
de C.V., a foreign corporation, HOLIDAY
VILLAGE WHITE SANDS S.A., a foreign
corporation, OCCIDENTAL HOTELS
MANAGEMENT B.V., a foreign corporation,
OCCIDENTAL HOTELES MANAGEMENT,
S.L., a foreign corporation, and ALLEGRO
RESORTS MARKETING CORPORATION,
a Florida corporation
        Defendants,
_____/

| | |
|---|---|
| LAW OFFICES OF BENNER & FORAN | JOSHUA D. YEAGER |
| BRIAN J. BENNER (P25239) | BRIAN MARQUEZ |
| NANCY SAVAGEAU (P56546) | Attorneys for Defendants, Occidental Hotels |
| DAVID A. PRIEHS (P39606) | Management B.V., Occidental Hoteles |
| Attorneys for Plaintiffs | Management, S.L. and Allegro Resorts |
| 28116 Orchard Lake Road | Marketing Corporation and Diamond |
| Farmington Hills, MI 48334 | Hotels Cozumel, S.A. de C.V. |
| 248-737-5544/248-737-5545(fax) | 1 North Franklin 10th Floor |
| | Chicago, IL 60606 |
| | 312-980-3011/312-726-3818 |
| ANTHONY J. CALATI (P34994) | |
| VINCENT C. RABAUT, JR.(P24443) | |
| Attorney for Defendants, Occidental Hotels | |
| Management B.V., Occidental Hoteles | |
| Management, S.L., Allegro Resorts | |
| Marketing Corporation and Diamond | |
| Hotels Cozumel, S.A. de C.V. | |
| 333 W. Fort Street, Suite 1600 | |
| Detroit, MI 48226 | |
| 313-965-6100/313-731-0410(fax) | |

_____/

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR ANSWER TO DIAMOND HOTELS COZUMEL S.A.DE C.V.'S**

**MOTION FOR SUMMARY JUDGMENT**

Table of Contents

Statement of Issues Presented …………………………………………………………………………………………..

Index of Cited Authorities  …………………………………………………………………………………………….

    I.       Introduction ………………………………………………………………………………………………

    II.      Statement of Facts ……………………………………………………………………………………..

    III.     Standard of Review …………………………………………………………………………………..

    IV.     Argument ………………………………………………………………………………………………

            A.   The defendant's motion must be denied because the is ample evidence from which a jury may determine that the defendant was negligent in the selection, inspection and maintenance of the hammock support post

            B.   Plaintiffs Steven Conley and Nancy Conley's claims for negligent infliction of emotional distress have adequate evidentiary support

<u>Counter Statement of Issues Presented</u>

I. Is there evidence from which a jury could conclude that the premises owner, Diamond Hotels Cozumel S.A. de C.V. was negligent in its selection, inspection and maintenance of the hammock support post?

   Plaintiffs Answer:  Yes

   Defendants Anticipated Answer:  No


II. Does the evidence support Nancy Conley and Steven Conley's claims for negligent infliction of emotional distress?

   Plaintiffs Answer:  Yes
   Defendants Anticipated Answer:  No

Index of Cited Authorities

**STATEMENT OF FACTS**

      Defendant Diamond Hotels Cozumel S.A. de C.V. admits that at all times relevant to this action it "owns and operates the Allegro resort in Cozumel where the accident that is the basis for this lawsuit occurred". (pg. 8, of Defendant's Brief)   While at the Allegro resort Jonathon Conley and two friends, all minors, climbed into a hammock near the pool area. (pg. 25, Exhibit A – transcript of the deposition of J. Conley)  Soon after the three boys climbed into the hammock, the post supporting one of the hammock snapped at ground level.  The hammock and boys fell to the ground.  The broken post then fell, striking Jonathon on the head.  (Id.)  When Jonathon was non-responsive his parents were summoned from nearby.  Dr. Jack Moores, a friend of the Conley family, was among the first to arrive at Jonathon's side.  He found Jonathon motionless and blue.  He was not breathing.  Dr. Moores believed that Jonathon was dead. (pg. __, Exhibit __)   When asked to describe the condition of Jonathon's father, Stephen Conley, at that time Dr. Moore described him as someone who had just lost his son. (Exhibit __, pg. __)  Dr. Moores administered two breathes to Jonathon before he began breathing. (Exhibit __, pg. __)  Jonathon then went into seizure activity before eventually regaining consciousness.  He was taken by ambulance to a local hospital where CT scans revealed a fractured skull and accumulation of blood on his brain.  A CT administered later that night as the family awaited the air ambulance showed that the brain bleed was worsening. (Exhibit __, pg. __)  The next morning Jonathon was evacuated to Broward Medical Center where he underwent emergency craniotomy.

      Another person who witnessed the incident was Mr. Douglas Stevens.  Mr. Stevens was a guest at the Allegro Cozumel at the time of Jonathon's injury.  In fact he witnessed the hammock post snap as Jonathon and his two friends were swinging in the hammock.  He was aware of the boys because his own three children had just been doing the same thing. (Exhibit S pg. 9)  He confirms that there were no signs warning of a maximum capacity for the hammocks. (Exhibit S, pg. 32)  Mr. Miguel Abreu was the acting General Manager at the Allegro Cozumel at the time of Jonathon's injury.  He has testified that it was not uncommon for two adults to occupy a single hammock at the resort. (Exhibit T pg. 27-28)

      Mr. Stevens, the guest who witness Jonathon's injury, is a building contractor by trade.  He estimated the failed wooden post to be approximately 10 inches in diameter. (Exhibit S pg. 36)  After tending to Jonathon, Mr. Stevens examined the broken post because "when a post like that size snaps like that, you know, I would have looked at it". (Exhibit S pg. 33)  What Mr.

Stevens saw explains why the massive post failed under what was a typical load. The post was relatively light weight, given its size. (Exhibit S, pg. 37)  It showed marked discoloration extending from below ground level to approximately 6 inches above the ground. (Exhibit S pg. 41-42)  This was discoloration which Mr. Stevens, through his experience as a contractor, associated with wood rotting from water damage. (Exhibit S, pg. 38-39)  Mr. Stevens also observed termite damage to the post. (Exhibit S pg. 39-40)  When asked if such deterioration was "predictable" because the post was set in ground which is at sea level, Mr. Stevens responded, "Yeah, it's an island". (Exhibit S pg. 42)

Mr. Lorenzo Chan, the general manager of the resort at the time of Jonathon's injury, was aware that there was a particular wood native to the region which was appropriate to outdoor uses, though he could not name it. (Exhibit __, pg. 60-61)  Mr. Jorge Resendiaz is the present maintenance manager at the Allegro Cozumel. He testified that the only wood which he would use for exterior supports posts in the Cozumel climate is from the Zapote tree. (Exhibit R pg. 25) This is a native hardwood which is universally recognized for its ability to withstand the flooding and tropical climate of the Riviera Maya. (Exhibit R - pg. 25)  Zapote is so superior to other woods for this application that Mr. Resediaz has never seen any other type of wood used as hammock support posts. (Exhibit R pg. 26)  Zapote wood will not rot. (Exhibit R, pg. 31) Zapote wood is easily recognized by its unique dark red coloration, which is consistent from the bark to the heart of the tree. (Exhibit R pg. 26-27)  Mr. Resendiaz would never use pine or other wood for exterior applications.  (Exhibit R pg. 27)  Reference to photographs depicting the cross section of the broken post reveal that it is clearly not Zapote, and is likely pine. (Exhibit __)

Mr. Resendiaz also discussed the "post-maintenance program" presently in place at the resort. (Exhibit R, pg. 21)  That program requires detailed inspection every six months using a

written checklist. (Exhibit R, pg. 21-22)  The program requires the inspector to "assure that the post is fully stabilized" (Exhibit R, pg. 21)  To determine stability the inspectors "touch and feel the posts to sense if it's hollow or empty inside. We even – we even hit it or we tap it to see and to hear its condition". (Exhibit R, pg. 22)

      Mr. Chan, the general manager of the resort at the time of Jonathon's injury, could not say what was done to inspect the resort's hammock support posts at the time of Jonathon's injury. (Exhibit __, pg. 63)  He did believe that maintenance personnel would check the posts as they "roam[ed] around" checking the resort caring for the resort. (Exhibit __. pg. 62-63)  There was then no particular inspection or maintenance protocol for the hammock posts. (Exhibit __, pg. 57, 63 & 66)

      Plaintiffs are unable to inspect the failed hammock support post.  Despite taking the time to obtain witness statements from its staff and prepare investigative reports regarding the incident (Exhibit Chan, pg. 49), the defendant has not preserved the post.  The acting general manager, Mr. Miguel Abreu (Exhibit __, pg. 31-33) and the present maintenance manager, Jorge Resendiaz (Exhibit __, pg. 27-28) are all unable to explain the disappearance of the post.

      Mr. and Mrs. Conley were understandably horrified, initially at the apparent death and then at the all too real life threatening injury suffered by their son.  Since that time Mr. Conley has suffered sleep disturbances related to the incident. Mr. Conley has suffered nightmares over the event which causes sleeplessness.  (Exhibit  ,p. 36-38) Mr. Conley was completely candid in describing some sleeping difficulties which preceded his son's injury.  However, he testified that the event "definitely had an impact" on his sleep.  (Exhibit __, pg. 36-38)   The stress associated with the injury to her son has caused Mrs. Conley to grind her teeth, causing jaw pain.  (Exhibit --, pg. 53)

**ARGUMENT**

A.  There exists a genuine issue of material fact which precludes granting defendant's motion for summary disposition.

Defendant Diamond Hotels Cozumel S.A. de C.V. admits that at all times relevant to this action it "owns and operates the Allegro resort in Cozumel where the accident that is the basis for this lawsuit occurred". (pg. 8, of Defendant's Brief)   Defendant also concedes that the plaintiffs were business invitees at the time of Jonathon's injury.  (pg. 13 of Defendant's Brief)

Parties in possession of land generally have a duty to use reasonable care to protect invitees from unreasonable risks of harm caused by dangerous conditions on their premises. *Bertrand v Alan Ford, Inc.*, 449 Mich 606, 609 (1995).  As invitees, Defendant owed Plaintiffs the following duties:

> An "invitee" is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception.  The **landowner has a duty of care**, **not only to warn** the invitee of any known dangers, **but the additional obligation** to also make the premises safe, which requires the landowner **to inspect the premises** and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.  Thus, an invitee is entitled to the highest level of protection under premises liability law.  (citations omitted). *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-97. (2000). (Emphasis Added).

As the property owner in control of the premises, defendant owed the plaintiffs, as invitees, a duty to inspect the premises for hazards that might cause injury. Plaintiff was entitled to "the highest level of protection" imposed under premises liability law. *James v Alberts*, **464 Mich 12**, **20**; **626 NW2d 158** (2001), quoting *Stitt v Holland Abundant Life Fellowship*, **462 Mich 591**, **597**; **614 NW2d 88** (2000).

As set forth in the Statement of Facts, there is clear evidence that the defendant failed in every aspect of its duties to the plaintiffs.  The defendant's selection of hammock support posts was negligent.  The photographs depicting the broken post

reveals that the interior of the wooden post was not the characteristic, uniform dark red associated with Zapote wood, which defendants concede is the only acceptable wood for that application. The defendant had no established procedure for inspection of the hammock support posts other than for the maintenance employees to make casual observations while "roaming" about the resort.  Independent witness Douglas Stevens confirms not only that the wood was rotted but that there were clear signs of the rotting on the exterior of the post.  He describes a darkening of the post extending approximately six inches above ground level which is associated with decomposing wood.  That line is visible on the photos.

Finally, because the defendant is guilty of spoliation of the most critical evidence, the post itself, plaintiff is entitled to the benefit of a presumption:

"When ... a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, ... it is proper for the trial court to create a rebuttable **presumption** that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence." *Welsh v. United States,* 844 F.2d 1239, 1248 (6th Cir.1988) (holding that a hospital's failure to have its pathologist test a skull fragment that was removed from the plaintiff during surgery constituted a negligent destruction of evidence that gave rise to a rebuttable **presumption** that the evidence was adverse to the hospital).

See also, Rogers v. T.J. Samson Community Hospital, 276 F.3d 228 (2002); , **276 F.3d 228 (2002)** Moreover, "[g]enerally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law."
*Banks v Exxon Mobil Corp*, 477 Mich 983, 984; 725 NW2d 455 (2007).

Clearly, there exists sufficient evidence to support a jury determination that the defendant was negligent in its selection, inspection and maintenance of the failed support post and the defendant's motion should be denied.

B. **Plaintiffs Steven Conley and Nancy Conley's claims for negligent infliction of emotional distress have adequate evidentiary support**

Under Michigan law; "A plaintiff may recover for negligent infliction of emotional distress where (1) the injury threatened or inflicted on the third person is a serious one, of a nature to cause severe mental disturbance to the plaintiff, (2) the shock results in actual physical harm, (3) the plaintiff is a member of the third person's immediate family and (4) the plaintiff is present at the time of the accident or suffers shock "fairly contemporaneously" with the accident". Taylor v. Kurapati, 236 Mich App 315, 360; 600 NW2d 670 (1999)

In the instant action, defendant challenges only one element in the plaintiffs' prima facie case; that of "physical harm". The defendant does not challenge whether sleep disturbance can qualify as physical harm, only whether the degree of sleep disturbance experienced by the plaintiffs qualifies. This argument reveals a misunderstanding of the law. A prima facie claim of negligent infliction of emotional distress does not require evidence of injury. It does not require injury at all, only harm. And there is no threshold for the physical harm element. The only question regarding physical harm is whether the plaintiff suffered <u>any</u>. Clearly, Plaintiffs' testimony at deposition provides support for their claims. Mr. Conley has suffered nightmares over the event which causes sleeplessness. (Exhibit ,p. 36-38) Mr. Conley was completely candid in describing some sleeping difficulties which preceded his son's injury. However, he testified that the event "definitely had an impact" on his sleep. (Exhibit __, pg. 36-38) The stress associated with the injury to her son has caused Mrs. Conley to grind her teeth, causing jaw pain. (Exhibit --, pg. 53)

In making its argument defendant misstates the evidence in subtle but important ways. The defendant's assertion that Steven Conley testified to having had "just a few" nightmares is inaccurate. Mr. Conley's testimony was that he has had a few night mares in the last "year or so". Of course this describes a period some three years after the accident. Neither Mr. nor Mrs. Conley suggest that time has not helped ease the physical manifestations of what they endured. But the degree of physical harm, and its change over time, relates to damages, not to the validity of their claims.

Plaintiffs having properly supported their claims for negligent infliction of emotional distress, the defendant's motion should be denied.

## CONCLUSION

For the reasons stated above plaintiffs request that this Court deny defendant Diamond's Motion to Dismiss.

LAW OFFICES OF BENNER & FORAN

By /s/ *David A. Priehs (P39606)*
BRIAN J. BENNER (P25239)
DAVID A PRIEHS (P39606)
Attorneys for Plaintiff
28116 Orchard Lake Road
Farmington Hills, MI 48334-3737
248-737-5544/Fax 248-737-5544
Dated: July 19, 2013          dap@dpriehspc.com